**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| THORNE RESEARCH, INC., and THORNE HEALTHTECH, INC., | ) ) ) | |
| Plaintiffs | ) ) | 2:26-cv-01758-RMG |
| v. | ) ) | C.A. No. _____ |
| NIAGEN BIOSCIENCES, INC., and CHROMADEX, INC., and THE QUEEN'S UNIVERSITY OF BELFAST | ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Thorne Research, Inc. ("Thorne Research") and Thorne HealthTech, Inc. ("Thorne HealthTech") (collectively, "Thorne") allege as follows for their Complaint against Defendants Niagen Biosciences, Inc. ("Niagen"), ChromaDex, Inc. ("ChromaDex"), and the Queen's University of Belfast ("University of Belfast") (collectively, "Defendants"):

**<u>NATURE OF THE ACTION</u>**

1.      This is an action for declaratory judgment of noninfringement of U.S. Patent No. 12,252,506 (the "'506 Patent") arising under the Declaratory Judgment Act (28 U.S.C. §§ 2201–2202) and the patent laws of the United States (35 U.S.C. § 1, *et seq.*); tortious interference with a contract; intentional interference with prospective contractual relations; and unfair competition pursuant to the South Carolina Unfair Trade Practices Act (S.C. Code § 39-5-10, *et seq.*).

2.      This action arises from Defendants' campaign to unlawfully restrain Thorne's ability to sell its products. Defendants sent letters demanding that Thorne remove its products from the marketplace, made allegations of patent infringement, and filed a complaint through

Amazon's Patent Evaluation Express ("APEX") procedure seeking removal of Thorne's product listings.  Defendants' allegations are without merit.  Thorne brings this action to obtain a judicial declaration that its products do not infringe any valid and enforceable claim of the '506 Patent.

## THE PARTIES

3.     Thorne Research is a South Carolina corporation with its principal place of business at 620 Omni Industrial Blvd., Summerville, South Carolina 29486.

4.     Thorne HealthTech is a Delaware corporation with its principal place of business at 620 Omni Industrial Blvd., Summerville, South Carolina 29486.  Thorne Research is a wholly owned subsidiary of Thorne HealthTech.

5.     Founded in 1984, Thorne is a science-driven wellness company developing innovative solutions for a personalized approach to health and wellness.  Thorne seeks to bring the scientific rigor of biopharmaceuticals to the prevention space to help people live longer, healthier lives.  Thorne offers unique, vertically-integrated brands to provide personalized data, products and services that empower individuals to take a proactive approach to improve and maintain their health over their lifetime.  By combining its proprietary multi-omics database, artificial intelligence and digital health content with its science-backed nutritional supplements, Thorne delivers a total system for wellness.  Thorne has spent millions of dollars researching and developing novel products to improve the health and wellness of people.

6.     On information and belief, Niagen is a Delaware corporation with its principal place of business at 10900 Wilshire Boulevard, Suite 600, Los Angeles, California 90024.

7.     On information and belief, ChromaDex is a California corporation with its principal place of business at 10900 Wilshire Boulevard, Suite 600, Los Angeles, California 90024.   On information and belief, ChromaDex is a wholly owned subsidiary of Niagen.

8.     On information and belief, the University of Belfast is a public research university

in Belfast, Northern Ireland, United Kingdom, whose address is University Road, Belfast BT7 1NN, United Kingdom.

## BACKGROUND

9.      On information and belief, Defendants' baseless allegations that the Thorne NR Products infringe the '506 Patent are a continuation of Defendants' harassment of Thorne that spans several years.

### A.      Defendants' Unsuccessful Prior Attacks on Thorne

10.     In prior litigation, ChromaDex accused Thorne of infringing U.S. Pat. Nos. 8,197,807 (the "'807 Patent") and 8,383,086 (the "'086 Patent")—patents it licensed from Dartmouth College.  Like the '506 Patent, the '807 and '086 Patents are directed to compositions of nicotinamide riboside ("NR").  *ChromaDex, Inc. v. Thorne Rsch., Inc.*, No. 1:21-cv-04241-ER (S.D.N.Y.) (hereinafter, "Failed ChromaDex Litigation").  Now, ChromaDex—in concert with the other Defendants—is attacking one of the same Thorne products (NiaCel® 400) that it attacked in the Failed ChromaDex Litigation.  *ChromaDex, Inc., et al. v. Thorne Rsch., Inc.*, No. 1:21-cv-04241-ER, D.I. 1, ¶ 13 (S.D.N.Y. May 12, 2021).

11.     The Failed ChromaDex Litigation ended because both of ChromaDex's patents were invalidated.  The relevant claims of the '086 Patent were found unpatentable by the Patent Trial and Appeal Board, and a District Court (affirmed by the Federal Circuit Court of Appeals) found the relevant claims of the '807 Patent invalid.[1]  *Thorne Rsch., Inc. v. Trustees of Dartmouth College*, IPR2021-00268, Paper No. 63 at 41 (PTAB May 31, 2022); *ChromaDex, Inc. v. Elysium Health, Inc.*, 59 F.4th 1280, 1286 (Fed. Cir. 2023).  In view of that invalidation, the litigation

---

[1] ChromaDex asserted the '807 Patent against another competitor in a separate action. *ChromaDex, Inc. v. Elysium Health, Inc.*, C.A. No. 18-1434-CFC-JLH (D. Del.).

against Thorne was dismissed. *ChromaDex, Inc., et al. v. Thorne Rsch., Inc.*, No. 1:21-cv-04241-ER, D.I. 31 (S.D.N.Y. Jan. 4, 2024).

**B.     The '506 Patent**

12.     The '506 Patent is entitled "Methods of Preparing Nicotinamide Riboside and Derivates Thereof," and was issued by the United States Patent and Trademark Office ("USPTO") on March 18, 2025.  A true and correct copy of the '506 Patent is attached hereto as Exhibit 1.

13.     The University of Belfast, Niagen, and ChromaDex have each held themselves out to be the owner of the '506 Patent.

14.     On its face, the '506 Patent is assigned to the University of Belfast.

15.     The USPTO Assignment Database indicates that the '506 Patent is assigned to the University of Belfast.  Ex. 2.

16.     In a signed exhibit to Amazon's APEX Agreement, Defendants asserted "ChromaDex, Inc. is the owner of the ['506] patent pursuant to an assignment from The Queens Belfast (Great Britain) dated December 16, 2025."  Ex. 3 (the "APEX Agreement") at 2.

17.     That APEX Agreement is signed by "Carlos Lopez, SVP, General Counsel, ChromaDex, Inc." *Id.*

18.     That APEX Agreement states that Carlos Lopez's email address is carlos.lopez@niagenbio.com. *Id.*

19.     On its face, the website niagenbio.com concerns Defendant Niagen, not Defendant ChromaDex.

20.     Niagen has publicly stated that it is the assignee and owner of the '506 Patent.

21.     For example, on December 22, 2025, Niagen stated in a press release that Niagen had "acquired a comprehensive portfolio of existing patents covering nicotinamide riboside (NR)

and its salt forms from Queen's University Belfast[.]" Ex. 4 at 1. The press release also stated "[t]his acquisition establishes Niagen Biosciences as the sole owner of the most comprehensive and defensible intellectual property portfolio in the NAD+ industry[,]" and "[t]he acquired patents include . . . U.S. Patent No. 12,252,506[.]" *Id.* at 1-2.

22.    Niagen's Form 10-K, filed with the United States Securities and Exchange Commission for the 2025 fiscal year, lists the '506 Patent among the intellectual property rights either owned or licensed by Niagen and specifies that the '506 Patent is "[o]wned by Niagen Bioscience[.]" Ex. 5 at 9-10.

23.    On information and belief, the University of Belfast, Niagen, and ChromaDex are operating in concert to threaten Thorne with enforcement of the '506 Patent.

**C.    ChromaDex's Cease and Desist Letters to Thorne**

24.    On September 20, 2024, ChromaDex sent a letter to Thorne asserting that "Thorne's use of NR Malate in its nutritional supplement products infringes upon the rights of ChromaDex[,]" including certain claims of U.S. Pat. No. 11,242,364 (the "'364 Patent").

25.    Thorne responded on October 25, 2024, stating that "Thorne's use of NR Malate in its products does not fall within the scope of any of the claims of the '364 patent."

26.    On May 13, 2025, ChromaDex sent Thorne another letter seeking details of the confidential manufacturing process for the NR Malate in Thorne's products. In this letter, ChromaDex further stated that it was "provid[ing] Thorne notice of the recent issuance of [the '506 Patent][,]" that "ChromaDex holds exclusive rights to the '506 [*sic*] Patent[,]" [2] and "request[ed] that Thorne reconsider discussing . . . cooperation between the two companies."

27.    Thorne responded on July 17, 2025, stating that ChromaDex's "notice" of the '506

---

[2] Niagen announced it had acquired the '506 Patent seven months later. *Supra,* ¶ 21.

Patent was without context, and requesting further explanation if ChromaDex sought a response.

28.     On July 22, 2025, ChromaDex sent Thorne another letter alleging that its prior "notice" of the '506 Patent was instead a cease and desist demand. Specifically, ChromaDex stated:

> We informed you that claims 1 and 26 of the '506 [*sic*] patent claim the NR malate compound. You had previously acknowledged that Thorne sells products containing NR malate (for example, its Niacel product), and understand that 35 U.S.C. §271(a) prohibits, inter alia, the sale of any patented invention during the term of the patent. That the sale of Niacel and any other Thorne product containing NR malate infringes the '506 patent is a tautology.
>
> […]
>
> It remains ChromaDex's preference that the parties directly discuss an amicable resolution to this matter. If Thorne declines this invitation, we ask that it . . . confirm that it will cease all sales of Niacel and any other product containing NR malate (including sales by partners such as the Mayo Clinic, which we observe is selling the Niacel product on its website) and destroy all existing NR malate product and inventory in its possession or control.

29.     ChromaDex did not further communicate with Thorne regarding the '506 Patent after the July 22, 2025 letter.

**D.     <u>Defendants Initiate an APEX Evaluation Against Thorne</u>**

30.     Amazon.com, Inc. ("Amazon") offers the APEX procedure "[t]o efficiently resolve claims that third-party product listings [on Amazon] infringe utility patents[.]" Ex. 6 at 1.

31.     An APEX evaluation is initiated when a U.S. utility patent owner submits an APEX agreement to Amazon identifying a patent and Amazon Standard Identification Number ("ASIN") of the products sold by third parties on Amazon that the patent owner alleges infringe the patent. Ex. 3 at 1, 2. Amazon then sends the patent owner-completed APEX agreement to the product seller and provides three options to continue selling the accused products on Amazon: (1) resolve the claim with the patent owner directly; (2) show that the product seller and patent owner are already in patent litigation, or that the product seller filed a declaratory judgment claim for

6

noninfringement of the patent; or (3) opt in to the APEX evaluation by executing and returning the APEX agreement. Ex. 7 at 1. If the product seller does not respond consistent with one of these three options within three weeks, the listings for the products identified by the patent owner are removed from Amazon. *Id.*

32. On information and belief, when an APEX agreement is submitted to Amazon, Amazon does not take any steps to confirm the submitter is the patent owner.

33. On information and belief, an infringement complaint on Amazon—such as initiation of an APEX evaluation—negatively impacts the "health score" of seller accounts. *E.g.*, Ex. 8 at 2-4, 6. On information and belief, there is a direct correlation between said "health score" and seller revenue, for example, by impacting search visibility (a lower health score leads to lower search visibility, meaning fewer sales). *E.g.*, Ex. 9 at 3-5.

34. Thorne has a contractual relationship with Pattern Inc. ("Pattern") relating to the sale of its products on Amazon.

35. On April 10, 2026—after almost nine months of silence from ChromaDex—Pattern received notice that ChromaDex initiated an APEX evaluation regarding Thorne's products. Ex. 7. Pattern sent that notice to Thorne. The notice stated that ChromaDex claimed that ten ASINs sold on Amazon infringed the '506 Patent. Ex. 3 at 2. Three of the ASINs were associated with Thorne products. Ex. 7 at 1.

**E.     Thorne's NR Products**

36. The April 10, 2026 APEX Notice Email identified three Thorne products which include nicotinamide riboside: (1) ResveraCel® (ASIN B097Z5387H); (2) SynaQuell® (ASIN B0B14F9PSR); and (3) NiaCel® 400 (ASIN B08WPXPTD8). *Id.* at 1. Each of these Thorne products is manufactured and sold from Thorne's facilities in South Carolina.

7

37.    ResveraCel® is a dietary supplement designed to promote healthy aging, support cellular metabolism, and enhance NAD+ production to boost cellular energy and metabolism.

38.    SynaQuell® is a brain health supplement designed to enhance cellular energy production and promote a healthy balance of inflammatory cytokines, particularly for individuals involved in contact sports.

39.    NiaCel® 400 is a dietary supplement containing nicotinamide riboside and betaine anhydrous to support healthy aging and optimize vitality.

40.    Thorne sells ResveraCel®, SynaQuell®, and NiaCel® 400 direct to consumers on its website, www.thorne.com.  Thorne has a contractual relationship with Pattern relating to the sale of these products on Amazon.

41.    Thorne sells additional products containing nicotinamide riboside that are not the subject of Defendants' APEX notice.  Together with ResveraCel®, SynaQuell®, and NiaCel® 400, all Thorne products that contain nicotinamide riboside malate are the "Thorne NR Products."

### JURISDICTION, VENUE, AND JOINDER

42.    Thorne incorporates by reference the preceding paragraphs as if fully set forth herein.

43.    This Court has subject matter jurisdiction over Thorne's claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, as well as the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

44.    This Court has supplemental jurisdiction over Thorne's claims arising under the laws of South Carolina pursuant to 28 U.S.C. § 1367 because Thorne's state law claims are so related to Thorne's federal law claims such that they form part of the same case or controversy and derive from a common nucleus of operative facts.

45.    This Court has personal jurisdiction over Niagen because it purposefully directed

enforcement activities relating to the '506 Patent to Thorne Research in South Carolina in an improper attempt to block sales of Thorne's products from South Carolina. Thorne Research is a South Carolina entity with headquarters and manufacturing facilities in Summerville, South Carolina, who markets and sells the Thorne NR Products in and from South Carolina. Niagen purposefully acted in concert with ChromaDex and the University of Belfast to direct communications at Thorne levying threats to enforce the '506 Patent—a patent Niagen asserts that it owns—against Thorne and acted in concert with ChromaDex to initiate the APEX evaluation attacking Thorne's ResveraCel®, SynaQuell®, and NiaCel® 400 products alleging infringement of the '506 Patent. Venue is proper for Niagen in this District pursuant to 28 U.S.C. § 1391 for the same reason.

46.     This Court has personal jurisdiction over ChromaDex because it purposefully directed enforcement activities relating to the '506 Patent to Thorne Research in South Carolina in an improper attempt to block sales of Thorne's products from South Carolina. Thorne Research is a South Carolina entity with headquarters and manufacturing facilities in Summerville, South Carolina, who markets and sells the Thorne NR Products in and from South Carolina. ChromaDex purposefully acted in concert with Niagen and the University of Belfast to direct communications at Thorne levying threats to enforce the '506 Patent—a patent ChromaDex also asserts that it owns—against Thorne and initiate the APEX evaluation attacking Thorne's ResveraCel®, SynaQuell®, and NiaCel® 400 products based on the patent. Venue is proper for ChromaDex in this District pursuant to 28 U.S.C. § 1391 for the same reason.

47.     This Court has personal jurisdiction over the University of Belfast under Fed. R. Civ. P. 4(k)(2). This is because: (a) the claims in this action arise under federal law; (b) the University of Belfast is not subject to the jurisdiction to any state's courts of general jurisdiction;

9

and (c) exercising jurisdiction over the University of Belfast is consistent with the U.S. Constitution.  This Court also has personal jurisdiction over the University of Belfast because it purposefully directed enforcement activities relating to the '506 Patent to Thorne Research in South Carolina in an improper attempt to block sales of Thorne's products from South Carolina. Thorne Research is a South Carolina entity with headquarters and manufacturing facilities in Summerville, South Carolina, who markets and sells the Thorne NR Products in and from South Carolina.  On information and belief, the University of Belfast purposefully acted in concert with Niagen and ChromaDex to direct communications at Thorne levying threats to enforce the '506 Patent—a patent assigned on its face and in the USPTO Assignment Database to the University of Belfast—against Thorne and acted in concert with ChromaDex to initiate the APEX evaluation attacking Thorne's ResveraCel®, SynaQuell®, and NiaCel® 400 products based on the '506 Patent. Venue is proper for the University of Belfast in this District pursuant to 28 U.S.C. § 1391 for the same reason.  Venue is also proper for the University of Belfast in this District pursuant to 28 U.S.C. § 1391(c)(3) because the University of Belfast is a foreign entity and may be sued in any judicial district.

48.    Joinder of the Defendants is proper pursuant to Rules 19 and/or 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299 because the conduct alleged herein raises an immediate, real, substantial, and justiciable controversy between Thorne and Defendants as to whether Thorne is infringing or has infringed the '506 Patent, arises out of the same transaction, occurrence, or series of transactions or occurrences relating to enforcement of the '506 Patent against Thorne, and poses questions of fact common to all Defendants.

### CLAIMS FOR RELIEF

### COUNT I: Declaratory Judgment of Noninfringement

49.    Thorne incorporates by reference the preceding paragraphs as if fully set forth

herein.

50.    On information and belief, the '506 Patent is owned by one or more of the Defendants.

51.    Defendants have asserted that the Thorne NR Products infringe the '506 Patent, both in cease and desist letters and in initiating an APEX evaluation.

52.    The Thorne NR Products do not infringe, directly or indirectly, any valid and enforceable claim of the '506 Patent.

53.    Each and every claim of the '506 Patent requires "[a] compound of formula (IV)" or "[a] method of making an isomerically pure compound of formula (IV)." Ex. 1 at Claims. The specification definition of formula (IV) requires that $R_6$, $R_7$, and $R_8$ must be "each independently a hydroxyl-protecting group." *Id.* at 7:14-15, 8:16-30 (compound of formula (IV) defining $R_1$–$R_8$ "as defined above", and wherein $R_6$, $R_7$, and $R_8$ "are each independently a hydroxyl-protecting group"). The Thorne NR Products do not contain a compound of formula IV where each of $R_6$, $R_7$, and $R_8$ are a hydroxyl-protecting group. Therefore, the Thorne NR Products, and the method of making them, do not infringe any claim of the '506 Patent.

54.    An actual, substantial, and continuing controversy exists between Thorne and the Defendants with respect to whether Thorne infringes any valid and enforceable claim of the '506 Patent, warranting the issuance of a declaratory judgment of noninfringement.

55.    Thorne seeks a declaration that it does not infringe any valid and enforceable claim of the '506 Patent. Without a declaratory judgment of noninfringement, Thorne has and will continue to suffer uncertainty and unquantifiable financial and business risks because of Defendants' allegations that the Thorne NR Products infringe the '506 Patent.

## COUNT II: Tortious Interference with a Contract

56.    Thorne incorporates by reference the preceding paragraphs as if fully set forth

11

herein.

57.     Defendants have engaged in tortious interference with a contract in violation of the common law.

58.     Specifically, Thorne has contractual relationships with Pattern to distribute the Thorne NR Products sold on Amazon.  On information and belief, Defendants each knew, or should have known, about Thorne's contractual relationship with Pattern.  On information and belief, Defendants acted in concert to improperly allege infringement of the '506 patent and initiate the APEX evaluation, which was designed to cause a breach of the contract between Pattern and Thorne, without justification.

59.     Defendants have caused, and will continue to cause, immediate and irreparable injury to Thorne, including injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.  Therefore, Thorne is entitled to an injunction restraining Defendants from engaging in any further acts and requiring Defendants to withdraw the meritless APEX evaluation.

60.     Thorne is entitled to the damages it incurred as a result of Defendants' tortious interference with Thorne's contract with Pattern including, but not limited to, the attorney and filing fees incurred in filing this suit to respond to Defendants' meritless APEX evaluation.  Thorne also seeks punitive damages for Defendants' tortious interference with Thorne's contract with Pattern.

### COUNT III: Intentional Interference with Prospective Contractual Relations

61.     Thorne incorporates by reference the preceding paragraphs as if fully set forth herein.

62.     Defendants have engaged in tortious interference with prospective contractual relations in violation of the common law.

63.     Specifically, Thorne has economic relationships with Amazon, Pattern, and end-

user consumers with respect to the sale of the Thorne NR Products, as described herein.  These relationships provided Thorne with the probability of future economic benefit and reasonable expectation of prospective contracts for sales of the Thorne NR Products.  Defendants, working in concert through ChromaDex, improperly initiated an APEX evaluation, alleging ResveraCel®, SynaQuell®, and NiaCel® 400 infringe the '506 Patent.  Defendants did so for the improper purpose of harming Thorne's sales.

64.    By initiating an improper, meritless APEX evaluation against the ResveraCel®, SynaQuell®, and NiaCel® 400 products, Defendants intentionally interfered with Thorne's potential future contracts regarding the Thorne NR Products with Amazon, Pattern, and end-user consumers, causing injury to Thorne.  On information and belief, Defendants also negatively impacted Thorne's Amazon account health rating, lowering, among other things, the search visibility of Thorne's products on Amazon, thereby interfering with said future economic benefits, causing injury to Thorne in the form of lost sales.

65.    Thorne also has economic relationships with authorized resellers and end-user consumers (who purchase directly from thorne.com) with respect to the sale of the Thorne NR Products.  These relationships provided Thorne with the probability of future economic benefit in the form of prospective contracts for sales of the Thorne NR Products.  Defendants improperly initiated an APEX evaluation, alleging ResveraCel®, SynaQuell®, and NiaCel® 400 infringe the '506 Patent.  Defendants did so for the improper purpose of harming Thorne's sales.

66.    By initiating an improper, meritless APEX evaluation against the ResveraCel®, SynaQuell®, and NiaCel® 400 products, Defendants intentionally interfered with Thorne's potential future contracts regarding the Thorne NR Products with authorized resellers and end-user consumers (who purchase directly from thorne.com), causing injury to Thorne.

67.    Defendants have caused, and will continue to cause, immediate and irreparable injury to Thorne, including injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.  Therefore, Thorne is entitled to an injunction restraining Defendants from engaging in any further acts and requiring Defendants to withdraw the meritless APEX evaluation.

68.    Thorne is entitled to the damages it incurred as a result of Defendants' intentional interference with Thorne's prospective contractual relations with Amazon, Pattern, authorized resellers, and end-user consumers including, but not limited to, the attorney and filing fees incurred in filing this suit to respond to Defendants' meritless APEX evaluation.  Thorne also seeks punitive damages for Defendants' intentional interference with Thorne's prospective contractual relations with Amazon, Pattern, authorized resellers, and end-user consumers.

**COUNT IV: Unfair Competition (S.C. Code § 39-5-10)**

69.    Thorne incorporates by reference the preceding paragraphs as if fully set forth herein.

70.    Defendants have engaged in unfair competition in violation of the South Carolina Unfair Trade Practices Act (S.C. Code § 39-5-10, *et seq.*) ("SCUTPA").

71.    Defendants, working in concert, engaged in an unfair act in the conduct of trade or commerce to initiate an unfounded APEX evaluation targeting Thorne's ResveraCel®, SynaQuell®, and NiaCel® 400 products for the improper reason of harming Thorne's existing and potential business relations, and sales.  Initiating a meritless APEX evaluation impacts the public interest, for example, as it improperly restrains and impedes legitimate marketplace competition. Thorne suffered monetary loss in the form of attorney and filing fees related to the institution of this action, as well as potential lost sales as a result of Defendants' baseless APEX evaluation, as discussed herein.

72.    Defendants knew, or in the exercise of reasonable care should have known, that

14

their actions were in violation of SCUTPA, but willfully proceeded with the meritless APEX evaluation.  Thorne is therefore entitled to recover treble damages.

73.     Defendants have caused, and will continue to cause, immediate and irreparable injury to Thorne, including injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.  Therefore, Thorne is entitled to an injunction restraining Defendants from engaging in any further acts and requiring Defendants to withdraw the meritless APEX evaluation. Such an injunction would be in the public interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Thorne respectfully requests that the Court enter judgment in its favor and against the Defendants as follows:

(a)     Declaring that Thorne has not infringed, induced others to infringe, or contributed to the infringement of any claim of the '506 Patent, directly or indirectly, literally or under the doctrine of equivalents;

(b)     A permanent injunction enjoining Defendants and their officers, directors, owners, members, partners, employees, agents, attorneys, successors, assigns, and all persons acting in concert or in participation with them, from:

(1)     Asserting, threatening to assert, or causing to be asserted any claim of the '506 Patent against Thorne or any of Thorne's customers, suppliers, distributors, or partners;

(2)     Representing, stating, or implying in any manner—whether orally, in writing, or through any other medium—that the Thorne NR Products infringe any valid and enforceable claim of the '506 Patent;

(3)     Initiating, maintaining, or threatening any action, suit, or proceeding alleging infringement of the '506 Patent by Thorne or any party in privity

with Thorne; and

(4)     Otherwise interfering with Thorne's right to make, use, sell, offer for sale, or import its products and services free from claims of infringement of the '506 Patent;

(c)     Adjudging this to be an exceptional case under 35 U.S.C. § 285, and awarding to Thorne its reasonable attorneys' fees, costs, and expenses;

(d)     An award of compensatory damages in an amount to be proven at trial, including damages for lost contractual benefits, lost revenues, and harm to Thorne's existing contractual relationships with its commercial partners;

(e)     A finding that Defendants' interference was intentional and unjustified, and an award of punitive damages in an amount sufficient to punish Defendants for their conduct and to deter similar conduct in the future;

(f)     A permanent injunction enjoining Defendants and their officers, directors, owners, members, partners, employees, agents, attorneys, successors, assigns, and all persons acting in concert or participation with them, from taking any action intended or reasonably likely to interfere with, disrupt, or cause the breach of any existing contractual relationship between Thorne and any commercial partner;

(g)     An award of compensatory damages in an amount to be proven at trial, including damages for lost prospective business relationships, lost sales, and harm to Thorne's business reputation and goodwill;

(h)     A finding that Defendants acted with actual malice or with a willful and wanton disregard for Thorne's rights, and an award of punitive damages in an amount sufficient to punish Defendants for their conduct and to deter similar conduct in the

16

future;

(i)    A permanent injunction enjoining Defendants and their officers, directors, owners, members, partners, employees, agents, attorneys, successors, assigns, and all persons acting in concert or participation with them, from making any further false, misleading, or disparaging statements or representations regarding Thorne or the Thorne NR Products to any existing or prospective end-user consumers, resellers, or commercial partners;

(j)    A finding that Defendants engaged in unfair and deceptive acts and practices in violation of S.C. Code § 39-5-20;

(k)    An award of actual damages in an amount to be proven at trial;

(l)    A finding that Defendants' violations were willful and knowing, and an award of three times Thorne's actual damages pursuant to S.C. Code § 39-5-140(a);

(m)    A permanent injunction enjoining Defendants and their officers, directors, owners, members, partners, employees, agents, attorneys, successors, assigns, and all persons acting in concert or participation with them, from engaging in any further unfair or deceptive acts or practices directed at Thorne, Thorne's products, or Thorne's end-user consumers, resellers, and commercial partners;

(n)    An award of reasonable attorneys' fees and costs pursuant to S.C. Code § 39-5-140(a);

(o)    Pre- and post-judgment interest at the maximum rate allowed by law; and

(p)    Granting to Thorne any further relief this Court may deem just, proper, or equitable.

Respectfully submitted,

s/ *Addie K.S. Ries*

Addie K. S. Ries

S.C. Bar No. 103016

OF COUNSEL:

**SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP**

Wendy L. Devine

Kristina M. Hanson

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

One Market Plaza

Spear Tower, Suite 3300

San Francisco, CA 94105

Telephone: (415) 497-2000

Facsimile: (866) 974-7329

150 Fayetteville St., Ste 2800

Raleigh North Carolina 27601

Telephone: (919) 821-6710

Facsimile: (919) 821-6800

aries@smithlaw.com

*Attorneys for Plaintiffs Thorne Research, Inc. and Thorne HealthTech, Inc.*

Dated: April 28, 2026

18